MACKALL HARRIS
vs.
JAMES A. SANGSTON AND OTHERS. }  JULY TERM, 1849.

[INJUNCTION.]

Upon motion to dissolve an injunction upon bill and answer, the answer, when speaking responsively to the bill, must be taken as true, and if it denies the averment of the bill upon which the equity for the injunction rests, the injunction must be dissolved.

---

[The facts of this case are fully stated in the following opinion of the Chancellor, delivered upon the hearing of the motion to dissolve the injunction which had been granted upon the bill.]

The Chancellor:

This case, standing ready for hearing upon the motion to dissolve the injunction, has been argued by the solicitors of the parties, and considered by the court.

The injunction, which was not commensurate with the prayer of the bill, was, in the opinion of the Chancellor, warranted by the allegation that the Sangstons had agreed to stand in the place of Welch, and to give up and reconvey the land upon receiving from the complainant, the sum which they had paid Welch, with the interest thereon. The allegation of the bill being, that Welch, as the administrator of one Henry Lyles, had levied an execution upon the land in question, issued upon a judgment in favor of said Lyles against Alexander Harris, for a balance of the purchase money due said Lyles for said land from Alexander Harris, under whom the complainant claims; that the amount so due Lyles from Alexander Harris was $843, being the balance with interest and costs due on the judgment; that Welch became the purchaser at sheriff's sale for that sum, agreeing with the complainant and Alexander Harris, that if they could procure any one to pay him said sum of money, he would agree to have the land secured to the complainant, and that James A. Sangston, at the request of Alexander Harris, and with the consent of his partners, did, out of the partnership funds, advance and pay said sum to Welch, and, in order to secure said sum according to the agreement, took a deed of the land from the sheriff to himself, and that at the time of the payment of the money and execution of the deed they all agreed to reconvey the land to complainant on payment to them of the said sum of money with interest, &c., but that since, in violation of this alleged agreement, they, the Sangstons, had sold the said land to Dr. George Dare for $1885.

An injunction was granted to restrain the Sangstons from parting with the securities they might receive from Dare on account of the sale to him until the further order of the court.

The bill contains many other statements, but it was upon this allegation, and the imputed violation of the agreement that the injunction was ordered, and it, therefore, follows, that if this allegation is denied, the injunction must be dissolved.

In answering this part of the bill, the Sangstons say, that Alexander Harris, who was largely indebted to them, called upon them in June, 1846, and represented that this parcel of land had sold much below its value, but that the purchaser from the sheriff, would permit him to redeem it by a certain day, upon payment of the sum for which he bought; that he, Harris, was unable to make the payment and that the lands would be so sacrificed unless they, the defendants, would advance the money.   That he represented to them that they would get a clear title, and that as the lands would sell for three thousand dollars, it would not only furnish an ample security for the sum then to be advanced, but give them additional security for the pre-existing indebtedness of Harris to them, and that for the purpose of getting this additional security for their claim, and not for the purpose or under the agreement stated in the bill, of simply holding the land as a mortgage or security for the money so advanced, they made the advance, and took from the sheriff an absolute deed.

The answer then denies the gravamen of the bill, so far as the title of the complainant to an injunction is concerned, and in addition to the rule that upon a motion to dissolve an injunction upon bill and answer, the answer, when speaking responsively to the bill, must be taken as true, there can be no doubt that the answer in this case gives much the most probable statement of the transaction.   That the Messrs. Sangstons should have made a cash advance in order to secure a pre-existing debt is very probable, especially when they were informed that the property of their debtor was about being sacrificed, but no adequate motive is shown for their conduct if they were merely to hold the property as security for the sum advanced, when the redeemed property was not to go back to their embarrassed debtor, but was to pass to another with whom there is nothing to show they had any relations of business or otherwise. This consideration need not be pursued, however, it being sufficient upon this motion that the answer explicitly denies the averment upon which the equity for an injunction rests.

But it has been insisted in the argument that as we are deal-

ing with the rights of Mackall Harris, the complainant, we should not be influenced by the agreement between Alexander Harris and the Sangstons. The bill, however, alleges that the money was advanced by them at the request of Alexander Harris, and that at the time of such advance and execution of the deed to them, they all agreed to reconvey the land to the complainant on payment to them of said sum of money and interest. This allegation is positively denied as has been mentioned, and a different and much more probable version of the transaction given. What then is the case? The Sangstons having procured a title to this property under an execution against Alexander Harris, issued upon a judgment for a balance of the purchase money due his vendor, and having made sale thereof to Dr. Dare, are restrained by the injunction of this court from parting with the bonds or notes of Dare to them, upon the ground that when they so procured the title, they agreed to hold it merely as security for the sum actually advanced at the time, and that upon the repayment of such advance, they would convey the property to the complainant, a purchaser from Alexander Harris. The defendants, the Sangstons, deny this statement, and aver that they advanced the money for a very different purpose, to wit, to secure a large debt due them from Alexander Harris. Why then should the injunction be continued? If their answer is true, and being responsive, it must upon this motion be taken as true, they are clearly entitled to enjoy the benefit of their purchase without the let or hindrance of this court. The injunction, therefore, must be dissolved.

A. RANDALL, for Complainant.
THOS. G. PRATT, for Defendants.